Patsy F. DiZenzo and Anna DiZenzo v. Commissioner.
Di Zenzo v. Commissioner
Docket No. 72738.
United States Tax Court
T.C. Memo 1966-16; 1966 Tax Ct. Memo LEXIS 265; 25 T.C.M. (CCH) 93; T.C.M. (RIA) 66016; January 20, 1966
Hirsh Freed, 85 Devonshire St., Boston, Mass., and Harold Lavien, for the petitioners. Frederick A. Griffen and Meade Emory, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: In Patsy F. DiZenzo and Anna DiZenzo, et al., T.C. Memo. 1964-121, filed April 30, 1964, we found that the net income of the corporation, Patsy Frank, Inc., for the taxable years 1946, 1947, and 1948 was $12,727.45, $17,298.42, and $16,540.56, respectively, resulting in the decision that there were deficiencies in income tax for each of those years in the respective amounts of $2,827.32, $3,810.60, *266 and $3,519.91, and additions to tax under section 293(b) of the Internal Revenue Code of 1939 for those years in the respective amounts of $1,413.66, $1,905.30, and $1,759.96. The corporation filed a petition for review by the United States Court of Appeals for the Second Circuit, but withdrew such appeal in open court. In such Memorandum Opinion we also found that the individual petitioner, Patsy F. DiZenzo, had diverted to himself corporate receipts in the taxable years 1946 through 1948 in the respective amounts of $10,699.16, $59,190.84, and $46,174.50, and that such amounts constituted ordinary income to him, without regard to whether the corporation had earnings and profits available for the payment of taxable dividends. The individual petitioners, Patsy F. DiZenzo and Anna DiZenzo, filed a petition for review by the United States Court of Appeals for the Second Circuit. Such court, by opinion entered June 28, 1965, DiZenzo, et al. v. Commissioner, 348 F. 2d 122, affirmed our findings as to net amounts diverted by Patsy Frank from the corporation, Patsy Frank, Inc., but held that such diversions were corporate distributions taxable as ordinary income only to the *267 extent they constituted dividends [1] under section 115 of the Internal Revenue Code of 1939, which depends upon whether there were earnings and profits of the corporation available for the payment of taxable dividends. The court therefore reversed our holding in this respect and remanded the case "for a finding as to whether the appellants have established that these amounts [net amounts diverted] were greater than the earnings and profits of Patsy Frank [the corporation] at that time." The Court of Appeals stated that the burden was on the individual taxpayers to establish that the corporation did not have earnings and profits equal to the amounts diverted. It pointed out that the corporation's current earnings and profits for 1946 through 1948, namely, $12,727.45, $17,298.42, and $16,540.56, respectively, were not adequate to cover the full amounts diverted in those years, namely, $10,699.16, $59,190.84, and $46,174.50, respectively, but went on to say that: We have no doubt that on the present record the Tax Court could properly have found that the appellants failed to establish that the accumulated earnings and profits of Patsy Frank did not equal the amounts which they diverted. *268 The Tax Court made no findings in this respect, however, and the record is not so clear as to permit us to hold as a matter of law that the appellants failed to sustain this burden. This issue therefore must be left for disposition on remand. The judgment of the Tax Court is reversed in part, and the case is remanded for additional findings. *269 Pursuant to the mandate of the Court of Appeals, we have carefully reviewed the existing record in this case in the light of the briefs filed by the parties, and set forth Findings of Fact (some of which were previously found by us in the prior Memorandum Opinion and some of which are supplemental) necessary to an understanding of the contentions of the parties regarding the issue of the accumulated earnings and profits of the corporation. Findings of Fact On July 16, 1928, Patsy Frank DiZenzo (hereinafter referred to as the petitioner) organized Patsy Frank, Inc. (hereinafter referred to as the corporation), under the laws of the State of Connecticut, to engage principally in the contracting business, and invested $10,000 in its capital stock. At all times material, the corporation reported its taxable income on the cash receipts and disbursements method of accounting and on a calendar year basis. At all times material the petitioner was president and treasurer of the corporation and held 98% of its stock. One percent of the stock was held by the other individual petitioner, Anna DiZenzo, and one percent was held by their son, William DiZenzo. During the taxable years 1946, *270 1947, and 1948 the corporation had office equipment consisting of 2 desks, 2 chairs, a table, and a filing cabinet. The other equipment which the corporation employed consisted of trucks, a concrete mixer, wheelbarrows, picks, shovels, hoes, rakes, scaffolding, etc. It owned no real estate. It maintained a checking account at the First National Bank & Trust Company at Bridgeport, Connecticut, in which there were balances at the end of each of the years 1946 through 1948 in the respective amounts of $1,641.23, $7,813.38, and $158.42. Attached to the corporation's income tax return for the taxable year 1949 was a statement purporting to set forth the balance sheet of the corporation for each of the taxable years 1947 and 1948, as follows: 1947
1948
Cash in Bank
$ 2,850.30
$ 3,315.30
Land
2,500.00
2,500.00
Building
22,000.00
22,000.00
Office Equipment
890.00
890.00
Equipment
2,200.25
2,200.25
Trucks
1,700.00
1,700.00
Dodge Truck
2,513.00
2,513.00
Chevrolet - 5-4-48
1,679.98
$31,803.25
$33,483.23
Equipment - 9-1-46
Depreciation Reserve
4,264.08
5,698.90
$27,539.17
$27,784.33
Total Assets
$30,389.47
$31,099.63
Liabilities
Capital Stock
$10,000.00
$10,000.00
Accrued Federal Income
Tax
68.04
184.42
Profit for Year
255.94
693.78
$10,323.98
$10,878.20
Surplus - Paid in and
Earned
20,065.49
20,221.43
$30,389.47
$31,099.63
*271 During the course of his examination, the revenue agent found no assets owned by the corporation in 1947 and 1948 other than office equipment, operating equipment, and money in the bank. In June 1950 the corporation sold its equipment to the petitioners' son, William, for $2,300 and ceased business operations. Opinion The petitioners contend that the record is sufficient to show that there was no substantial amount of accumulated earnings and profits as of the beginning of the taxable year 1946. They request that we take judicial notice of the fact that the years 1946, 1947, and 1948 (in which the corporation had taxable income of $12,727.45, $17,298.42, and $16,540.56, respectively) were the immediate post-war years when building and remodeling was in peak demand and that during the preceding 4 years the United States was a war and that there were governmental restrictions on civilian building of the type performed by the corporation. They argue that therefore it is reasonable to assume that the years 1946, 1947, and 1948 were boom years and that the earnings for those years would be substantially larger than those for the preceding 4 or 5 years. They further contend that *272 the evidence indicates a strong and well-defined pattern on the part of the petitioner of treating the corporation as his personal business, intermingling funds, and paying both business and personal expenses out of the combined funds, that it is reasonable to conclude that in any year all funds, aside from those necessary to pay corporate expenses, were taken by the individual taxpayer as constructive dividends, and that therefore logic would strongly militate against a conclusion that there existed prior to 1946 any substantial amount of accumulated earnings and income. The corporation was organized in 1928. The record contains no evidence whatsoever as to the amount of earnings and profits of the corporation in any of the years from 1928 through 1945. Nor does the evidence show the disposition of whatever earnings and profits the corporation had in any of such years. It has not been shown that the petitioner in prior years withdrew the earnings of the corporation as dividends. We cannot indulge in speculation in these respects, as the petitioners would have us do. The petitioners rely heavily upon the statement attached to the corporate return for the taxable year 1949 purporting *273 to set forth the balance sheet of the corporation for each of the years 1947 and 1948. It shows total assets for 1947 of $30,389.47 and for 1948 of $31,099.63 and paid-in and earned surplus for each of those years of approximately $20,000. Such statement has been clearly shown to be unreliable. For example, among the assets of the corporation for each of the years was included land and building in the aggregate amount of $24,500, whereas the evidence shows that the corporation did not own any real estate. Such statement has also been shown to be erroneous in showing cash in bank for the years 1947 and 1948 in the respective amounts of $2,850.30 and $3,315.30, whereas the correct amounts were $7,813.38 and $158.42, respectively. Nevertheless, the petitioners contend that this statement, as corrected in these respects, constitutes proof that if there had been assets in cash or in some other form as the result of accumulated earnings and profits for years prior to 1946, the same had been dissipated prior to the end of 1946. We cannot agree. Such statement may be erroneous in other material respects. We cannot agree with the petitioners that the fact that the revenue agent in the course *274 of his investigation found no assets of the corporation other than its office equipment, operating equipment, and money in the bank necessarily means that the corporation did not have other assets in cash or in some other form. In this connection it is to be noted that the Court of Appeals stated that "the fact that the balance sheet was drawn up to accord with the corporation's tax returns for those years destroys whatever probative value it might otherwise have had." It is our conclusion, and we find, that the petitioners have failed to prove that the corporation did not have accumulated earnings and profits for years prior to 1946 sufficient, together with available earnings and profits of the years 1946 through 1948, to equal the amounts of corporate receipts diverted by the petitioner to his own use in the years 1946 through 1948. The petitioners have thus failed to show that the diversions in the amounts of $10,699.16, $59,190.84, and $46,174.50 in the taxable years 1946, 1947, and 1948, respectively, did not represent taxable dividends under section 115 of the Code, and therefore such amounts must be treated as ordinary income of the petitioners for those years. It is unnecessary *275 to consider the secondary question raised by the petitioners as to whether, even though the corporation employed the cash receipts and disbursements method of accounting and reporting, there should be taken into account, in computing its earnings and profits available for the payment of taxable dividends, accrued but unpaid taxes and additions to tax, and interest thereon, for the taxable years 1946, 1947, and 1948, since, even if so, the petitioners have failed to show that the accumulated earnings and profits of the corporation for prior years were not sufficient to equal the amount of the diversions in the years 1946, 1947, and 1948. Decision will be entered under Rule 50. Footnotes
1. Section 115 of the Code provides in part as follows: (a) Definition of Dividend. - The term "dividend" * * * means any distribution made by a corporation to its shareholders * * * (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * * (b) Source of Distributions. - For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *
(d) Other Distributions from Capital. - If any distribution made by a corporation to its shareholders is not * * * a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. * * *↩